Nott, J.,
delivered the opinion of the court:
This is an action brought upon the charter-party of the schooner Haxall, and to recover a balance alleged to be due of $3,717 84. The facts of'the case are these:
On the 23d April, 1864, the claimant, by B. F. Small & Co., his agents in the city of New York, and- the defendants, by their assistant quartermaster, Captain Francis J. Orilly, execute a charter-party 'of the schooner Haxall. By this charter-party it is provided that the schooner shall be employed in the military service of the defendants, “the war risk to he home by the United States, the marine risk to he borne by the owner,” and the schooner “to he employed in such service as the party of the second part may direct.”
It is also further provided, that “the said vessel is valued and appraised at the sum of fourteen thousand dollars, and should she be retained so long in the service of the United States that the money paid and due on account of said charter (deducting therefrom the actual cost of running and keeping in repairs the said vessel during the said time, together with a net profit of 25 per cent, per annum, on said appraised value) shall be equal to the said appraised value, then the said vessel shall become the property of the United States without *22 further payment, except such sum as may then he due on account of the services of the said vessel rendered under said charter.
11 And further, f at any time during the continuance of this charter-the United States shall elect to purchase the said vessel, then they shall have the right to take her at the appraised value at the date of the charter, and all the money then already paid and due on account of said charter (deducting therefrom the actual cost of running and keeping in repairs the said vessel during the said time, together with a net profit of 25 per cent, per annum on the original appraised value) shall apply on account of the said purchase.”
The schooner enters into the service of the defendants under the charter-party, and is employed on the James river, below Richmond. On the 15th June, 1864, by order of Major General Butler, commanding the military department, he acting under the direction of Lieutenant General Grant, commanding all the armies of the United States, the schooner Haxall is taken, for military purposes, and sunk in the James river. On the one hand no reference is made to her charter-party, and on the other it is not pretended that she is captured or enemy’s property; she is simply needed for military defensive operations, and is taken accordingly.
The owner thereupon applies for compensation, first to the quartermaster in New York, General Yan Vliet, and next to the Third Auditor. In this second application he furnishes the Third Auditor with the charter-party of the .schooner, and a certificate of her destruction, and an account showing the amount due by the terms of the charter-party, as agreed and settled by the quartermaster in New York. The claimant makes no claim outside, of his charter-party, and his account is made up in accordance with its terms.
The balance due upon this account under the charter-party is $13,717 84; no proof is offered of any other sum, nor is the value shown in any other way, but the Third Auditor only allows upon the claim $10,000, and the claimant objecting that he does not accept this as a full settlement of his demand, nevertheless receives it. Subsequently he files a second claim with the Third Auditor for this balance, and finally brings his action in this court.
When this case was before the court on demurrer, the facts consid- ■ ered were substantially those now presented by the evidence. We then held that the action could not be sustained as an action on a valued policy of insurance wherein the term “war risk” covered the claimant’s loss by the destruction of his schooner; and that the taking of the schooner was not under the right of eminent domain, nor was *23 it to be deemed an “appropriation” of property by tbe army or navy within the meaning of the act to restrict the jurisdiction of this court, (act 4 July, 1864, 13 Stat. L., p. 381,) and we held directly that the taking of the vessel by the military authorities was to be a taking under and by virtue of the contract, and that it was immaterial what might have been the individual intent of the officer making the seizure, or whether he knew or was ignorant of the fact that such a contract existed. But we were careful to say that “whether the proceedings before the Third Auditor, followed by the claimant’s acceptance of the award, were final and conclusive upon him; and whether, by preferring his claim to the Third Auditor upon the statutory ground of the vessel having been destroyed ‘by the order of the commanding general,’ he may be held to have abandoned his contract, and to have elected to pursue a remedy inconsistent with his right to again resort to the contract, aré questions upon which, we express no opinionand we at the same time pointed out the fact that “ if the claim was presented to the Third Auditor as one founded upon an express contract, then his award could not have been based.upon the statutory ground of ‘ destruction by the order of the commanding general,’ and he must have sat as an •ordinary accounting officer.” (2 C. Cls. B., p. 159.)
The principal point now made by the Deputy Solicitor (who represents the government upon the trial) is the same question as to the effect of the award of the Third Auditor, and he insists that “ the traverse now filed has given full opportunity for the present claimant to show what was the course he adopted, and whether he did not abandon his contract, and elect to pursue a remedy under the statutory rules for compensating all having their property destroyed in the military service, under the order of a commanding general. It seems clear, from the evidence, that the claim was regularly made in view of the act of 1863 j” but there are two objections to this conclusion.
In the first place, this statutory award, judgment, or whatever it may be, is not properly in evidence. The Deputy Solicitor says that the Third Auditor sat as a commissioner or arbitrator, and he speaks of the award as a “ statutory judgment ” The statute also speaks, of these awards as “adjudications” and “judgments,” and directs that they shall be entered in a book to be provided for that purpose, (act 3 March, 1849, 9 Stat. L., p. 414.) The statutory award, therefore, is in the nature of a record, and could only be proved as a record, and not by parol. That section of the statute has since been repealed, (act 28 July, 1866,14 Stat. L., p. 327, sec. 8,) but the case was decided before, and the record might be produced. N o such record is produced, *24 and in the absence of such vital evidence this court cannot give effect to an award which is not properly before it, nor say that the action of the Third Auditor is final and conclusive, and estops the claimant from seeking relief in legal tribunals.
In the second place, the evidence offered by the Deputy Solicitor does not sustain that position, but, on the contrary; leads to an opposite conclusion. The certificate of the Third Auditor shows that the claimant did submit the charter-party as the ground of his demand, and that he did claim compensation under it, and that he did not “ abandon his contract, and elect to pursue a remedy under the statutory rules for compensating all having their property destroyed in the military service, under the order of a commanding general.” The parol testimony, too, of the claimant, which is cited for the defendants, is to the same effect: “ I came first,” he says, “ with the accounts to General Van Yliet, quartermaster in this city. There the accounts were all made out and sent to the Third Auditor at Washington. I heard nothing of it for some time, and then I went to Washington and saw the Auditor, and asked about the matter. He sent me, I think, to the chief clerk, who told me he could not attend to it at present. I then corresponded with the Third Auditor, who requested me to send papers and documents, which I did. He then sent me a draft for $10,000.” Here is nothing which looks like a trial on evidence “ taken and authenticated” under the rules prescribed by the statute, but, on the contrary, the action of the Third Auditor as an accounting officer adjusting the accounts of a creditor upon contract. In Alire’s case, (1 C. Cls. B., p. 234,) this court hold that “in cases of money claims it has not been considered as ousting or affecting our jurisdiction that the accounting officers, or even the head of a department, has decided that the claimant was not entitled to be paid.” We have repeatedly re-expressed the same conclusion in different forms, and under it we can give no binding or final effect to the award in this case.